# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| RICHARD POWELL and VICKIE POWELL § § § | |
| vs. § § | Case No. 4:12cv512 (Judge Mazzant) |
| BANK OF AMERICA, N.A., ET AL. § | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Bank of America, N.A. ("BANA"), successor by merger to BAC Home Loans Servicing, LP's Motion for Summary Judgment (Dkt. #65). Having considered all relevant pleadings, the Court finds that the motion should be granted.

This dispute revolves around three properties that Defendant asserts are subject to foreclosure. Plaintiffs filed three separate lawsuits relating to each property. Two of these lawsuits were filed in this Court and were dismissed with prejudice. The claims raised with regard to the Thorncliff Property were dismissed with prejudice in case 4:11cv80. The claims raised with regard to the Keystone Property were dismissed with prejudice in case 4:11cv579. The third lawsuit related to claims regarding the Sydney Property, and this lawsuit was dismissed without prejudice in state court.

### BACKGROUND

On January 20, 2006, Plaintiffs Richard Powell and Vickie Powell executed a promissory note (the "Note") payable to the order of Bank of America, N.A. in the principal amount of $141,629.79. To secure repayment of the Note, plaintiffs concurrently executed a Deed of Trust. The Deed of Trust encumbered the property located at 4138 Sydney Drive, Frisco, Texas 75034 (the "Property"). After purchasing the Property, Plaintiffs leased the Property to a tenant and the Property

has remained occupied by a tenant since 2006. Plaintiffs collected approximately $1,300 to $1,500 per month for rent until August 2013.

In March of 2006, Plaintiffs started making payments. For nearly two years and eight months they made all of their payments on time, never having a single late payment. In December 2008, Plaintiffs missed their first payment. Plaintiffs managed to get caught up on their payments through June of 2009. In July 2009, Plaintiffs again fell behind due to the economy.

In September 2009, Plaintiffs defaulted on their obligations under the Note and Deed of Trust, despite the Property being leased and the tenant current on his rental obligations. BANA served plaintiffs with a notice of default dated December 7, 2009, identifying the deadline and total amount due to cure the default. Plaintiffs were behind a total of $2,816.83 including late charges and uncollected late charges. Plaintiffs had until January 6, 2010, to cure the default or the mortgage would be accelerated and ultimately BANA would begin foreclosure proceedings.

Plaintiffs failed to cure their default, and BANA initiated foreclosure proceedings. On November 22, 2010, Plaintiffs received a loan modification application with HAMP features included. Since this was not their primary residence, Plaintiffs elected to utilize the loan modification information put together by Chris Garek with United Mortgage Solutions. On March 2, 2011, Plaintiffs received a certified letter from BANA's attorneys along with Notice of Substitute Trustee Sale informing them that their home would be sold April 5, 2011, at the Denton County Courthouse.

On March 2, 2011, Plaintiffs received an e-mail from Chris Garek asking Plaintiffs to provide more information requested by BANA for their loan modification. Plaintiffs complied. On March 17, 2011, Plaintiffs faxed the Notice of Substitute Trustee Sale letter to their attorney, Marc Girling

with Girling Law Firm. On March 28, 2011, Plaintiffs faxed confirmation that they had e-mailed their Deed of Trust as he had requested. On March 30, 2011, Marc Girling sent a Qualified Written Request to BANA. Plaintiffs received another Notice of Substitute Trustee Sale on April 11, 2011. This time the foreclosure was set for May 3, 2011.

On April 15, 2011, Marc Girling received a letter from BAC Home Loans, specifically from Tracy Huffman, Litigation Specialist. She had received Marc Girling's correspondence dated March 30, 2011, on April 1, 2011. She offered to further analyze the details, and indicated she would respond to the letter after completion of their investigation.

BANA did not withdraw the foreclosure. To halt the foreclosure proceedings, Plaintiffs filed a lawsuit in the 393rd Judicial District Court of Denton County, Texas, Cause No. 2011-60307-393. Plaintiff Richard Powell's affidavit states that "[d]uring the litigation, [BANA] agreed to modify our loan if we would voluntarily dismiss the suit. So we then voluntarily dismissed the suit....[BANA] sent us a loan modification application on July 17, 2012...[BANA], however, never performed its agreement to modify the loan, and instead requested the Property for sale for August 7, 2012." BANA's position is that Plaintiffs agreed to dismiss the first lawsuit in exchange for BANA's consideration of their application for a loan modification.

Plaintiffs testified they did not receive any written communication from BANA promising to modify their loan. Instead, Plaintiffs acknowledged that only their attorney informed them they would receive a loan modification, admitting BANA never indicated, in writing or even verbally, their loan would be modified in exchange for dismissal of the first lawsuit. The only written document that is part of the summary judgment record is an e-mail correspondence between BANA's counsel and Plaintiffs' former counsel establishing BANA did not promise to modify Plaintiffs' loan.

3

The email to Plaintiffs' former counsel states the following:

> We believe the state court counterpart to the two federal cases should be dismissed as [sic]. In light of the federal court's decisions on the Powell matters, we strongly believe any continued litigation in the state court action would be fruitless. In order to save fees on both our behaves, we will act as a facilitator between the Powells and the bank in processing a loan modification if the Powells will agree to dismiss the remaining state court case.
>
> Please let me know if the Powells will dismiss this case. If so, we will agree to act as a facilitator on the file while the bank determines whether plaintiff will qualify for a loan modification. In doing so, we will need all the loan modification documents, including the additional documents requested on February 16, 2012.

In a follow-up email to Plaintiffs' former counsel it was explained that "[a]s you already know, there is no guarantee a loan mod will be approved by the bank. And, as you also know, our role in facilitating a loan mod is limited to the exchange of documents and notice to you or the Powells of terms (if available)." Plaintiffs then voluntarily dismissed the first lawsuit on March 21, 2012.

After the first lawsuit was dismissed, Plaintiffs applied for a loan modification, but failed to submit all required documents necessary for BANA to complete the loan modification review. BANA subsequently served Plaintiffs with a notice of foreclosure sale scheduled for August 7, 2012. To stop the foreclosure, Plaintiffs filed this lawsuit on August 3, 2012.

On September 16, 2013, BANA filed a motion for summary judgment (Dkt. #65). On October 22, 2013, Plaintiffs filed a response (Dkt. #72). On November 15, 2013, BANA filed a reply (Dkt. #75).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257.

## ANALYSIS

BANA moves for summary judgment on all claims. Plaintiffs' response fails to address BANA's motion with regard to Plaintiffs' claims for anticipatory breach of contract and unreasonable collection efforts; therefore, BANA is entitled to summary judgment on these claims.

5

**Breach of Contract Claim**

Plaintiffs allege BANA breached a contract to modify their loan, contending during litigation, BANA agreed to modify Plaintiffs' loan if they voluntarily dismissed the suit and Plaintiffs then voluntarily dismissed the suit, but Defendants never performed their obligation to modify the loan.

In order to establish a claim for breach of contract, Plaintiffs must establish: (1) the existence of a valid, enforceable contract; (2) they performed or tendered performance; (3) Defendant breached the contract; and (4) Defendant's breach caused Plaintiffs' damages. *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

BANA asserts that Plaintiffs' claim fails as a matter of fact and law because (1) no contract was formed, and (2) any purported oral agreement is barred by the statute of frauds. BANA first asserts that there was no valid and enforceable contract. "Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Winchek v. American Exp. Travel Related Services Co., Inc.*, 232 S.W.3d 197, 202 (Tex. App.--Houston [1 Dist.], 2007, no pet.) "To be enforceable, a contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the parties." *Id.* (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992))

BANA asserts that there is no evidence that BANA offered to or promised to modify Plaintiffs' loan. BANA asserts that Plaintiffs testified they did not receive any written communication from BANA promising to modify their loan, and also acknowledged that only their attorney informed them they would receive a loan modification, admitting BANA never indicated,

in writing or even verbally, their loan would be modified in exchange for dismissing the first lawsuit. BANA argues that because the summary judgment record is devoid of any evidence of an enforceable contract and the evidence establishes no BANA representative offered to modify Plaintiffs' loan in exchange for dismissing the first lawsuit, BANA is entitled to summary judgment on Plaintiffs' claim for breach of contract. BANA further asserts that even if Plaintiffs' allegations amounted to a contract, it would be barred by the statute of frauds. BANA argues that Plaintiffs do not identify any writing evidencing the alleged contract to modify the loan; accordingly, the alleged contract is barred by the statute of frauds.

Plaintiffs assert BANA's conduct created a unilateral contract. Plaintiffs also assert that the statute of frauds is not applicable, that promissory estoppel and a partial performance prevents application of the statute of frauds.

A unilateral contract requires a promise, which is a manifestation of an intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made, acceptance of which by performance will form a contract. *See Lopez v. JP Morgan Chase Bank, N.A.*, No. SA–11–CA–936, 2012 WL 2726762, at *2 n.1 (W.D. Tex. July 9, 2012). Thus, a unilateral contract becomes enforceable when the promisee performs rather than when the parties make mutual promises. *Id.* Unilateral contracts are part of Texas common law. *Id.* Almost all unilateral contracts begin as illusory promises; what matters is whether the promise became enforceable by the time of the breach. *Id.*

Under Texas law, a unilateral contract is "created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011). However, any contract modifying

7

the underlying Note and Deed of Trust was subject to the requirements of the statute of frauds. *Id.* Any modification of the underlying loan agreement must have been in writing. Plaintiffs' attempt to recast their breach of contract allegations as a breach of unilateral contract claim does not allow them to avoid the statute of frauds. *See Obuekwe v. Bank of Am.*, No. 4:11-CV-762-Y, 2012 WL 1388017, at *5 (N.D. Tex. Apr. 19, 2012); *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *8 (N.D. Tex. May 30, 2012); *Watson*, 814 F. Supp. 2d at 732; *Smith v. Citimortgage, Inc.*, No. 4:10CV693, 2012 WL 629058, at *3-4 (E.D. Tex. Feb. 27, 2012).

The Court agrees with Plaintiffs and disagrees with BANA regarding the formation of a unilateral contract. There is evidence that a contract was formed. However, the contract formed is not the one being asserted as part of this lawsuit. It appears that an agreement was reached that called for Plaintiffs to dismiss the first lawsuit in exchange for consideration of a loan modification. Plaintiffs have not asserted a claim that they were not considered for a loan modification. Instead, Plaintiffs assert that the agreement was that for dismissing the first lawsuit, a loan modification would be approved. However, there is no summary judgment evidence to support this assertion other than Richard Powell's self-serving statement. The affidavit conflicts with his deposition testimony that Plaintiffs had no communications, either oral or written, with BANA that made any promise of a loan modification in exchange for dismissal of the first lawsuit. Plaintiffs concede that all communications were with Plaintiffs' former attorney. The record is devoid of any affidavit or testimony from the former attorney stating that these promises were made. The record does contain the email exchange with the former counsel that clearly indicates that no such promises were made. Thus, the self-serving statement is not sufficient summary judgment evidence to establish any agreement to modification of the loan in exchange for dismissal of the first lawsuit. The Court has

no doubt that Plaintiffs believe that their former counsel made such representations, but based upon this summary judgment record, there is no summary judgment evidence of an enforceable contract that establishes that BANA's representative offered to modify the loan in exchange for dismissal of the first lawsuit.

Even if there was a contract formed, the Court agrees that it would be barred by the statute of frauds. As to the original agreement, the statute of frauds requires that it be in writing. *See* Tex. Bus. & Com. Code § 26.02(a)-(b) (stating that any promise, undertaking, commitment, or agreement where the financial institution loans, delays repayment, agrees to loan or delay repayment, or otherwise makes a financial accommodation to which the amount in question exceeds $50,000 must be in writing). The Court finds that the statute of frauds is applicable to this case, and alleged oral modification did not comply with the statute of frauds.

To establish the defense of promissory estoppel, Plaintiffs must establish: (1) a promise; (2) reliance thereon that was foreseeable to promisor; and (3) substantial reliance by promisee to their detriment. *Lozada v. Farrall & Blackwell Agency, Inc.*, 323 S.W.3d 278, 291 (Tex. App.—El Paso 2010, no pet.). However, when promissory estoppel is raised as a defense to the statute of frauds, "there is an additional requirement that the promisor promised to sign a written document complying with the statute of frauds." *Ford v. City Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.—Corpus Christi 2001, no pet.). There is no allegation offered that BANA promised to execute a written document, but rather only agreed to consider Plaintiffs for a loan modification. Therefore, the Court concludes that Plaintiffs offer insufficient summary judgment evidence that to a promissory estoppel claim as a defense to the statute of frauds. *See Deuley v. Chase Home Fin. LLC*, No. H-05-04253, 2006 WL 1155230, at *4 (S.D. Tex. Apr. 26, 2006). Under Texas law, the statute of frauds does not

9

apply to partially performed oral contracts if denial of enforcement of the contract amounts to a virtual fraud. *Barnett v. Legacy Bank of Tex.*, No. 11-02-00114-CV, 2003 WL 22358578, at *7 (Tex. App.—Eastland Oct. 16, 2003, pet. denied). Fraud arises if the contract is denied when "there is strong evidence establishing the existence of an agreement and its terms…." *Id.* at *7. A party's partial performance is strong evidence when it is "unequivocally referable to the agreement and corroborative of the fact that a contract was actually made…." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). "The acts of performance…must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced…." *Barnett*, 2003 WL 22358578, at *7. There is no summary judgment evidence that establishes a fact issue on the necessary elements of partial performance. Thus, Plaintiffs' claim that BANA orally agreed to modify the loan fails under the statute of frauds. There is no basis for Plaintiffs to recover for alleged oral modification to the Note and Deed of Trust based upon this summary judgment record. At best, Plaintiffs' performance of dismissing the first lawsuit for consideration of a loan modification did in fact occur.[1]

A party's nonperformance of a contract will be excused when that party's performance is prevented by the other party. *See Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.--Houston [1st Dist.] 2003, pet. denied); *Erickson v. Rocco*, 433 S.W.2d 746, 751–52 (Tex. Civ. App.--Houston [14th Dist.] 1968, writ ref'd n.r.e.). There is no evidence that Defendant did anything to prevent

---

[1] Plaintiffs cite the Court to *Montalvo v. Bank of America Corp.*, 864 F. Supp. 2d 567, 584-86 (W.D. Tex. 2012). Plaintiffs' reliance upon this case is misplaced. Even if this case were binding on this Court, which it is not, Plaintiffs were already in default when they looked at modification options. Plaintiffs also fail to point out that in *Montalvo* the court found that this issue was not addressed by the parties and the court allowed the defendant to file a supplemental motion on this issue. *Id.* at 586. Plaintiffs also fail to point out that a supplemental motion was filed, and that motion was granted and these claims dismissed. *See Montalvo v. Bank of America Corp.*, Civil Action No. SA–10–CV–360–XR, 2013 WL 870088, at *11-12 (W.D. Tex. Mar. 7, 2013). The Court agrees with BANA that there is no evidence offered to support a claim of estoppel.

Plaintiffs from meeting their obligations under the Note and Deed of Trust.

**Texas Collection Practices Act Claims** ("TDCA")

Plaintiffs allege BANA violated sections 392.304(a)(19), 392.303(a)(2), 392.301(a)(8), and 392.304(a)(8) of the TDCA. According to Plaintiffs, BANA (1) promised to modify their loan in return for dismissal of the first lawsuit, but proceeded with foreclosure nonetheless in violation of section 392.304(a)(19); (2) violated section 392.303(a)(2) by attempting to collect charges incidental to their obligations; (3) violated section 392.301(a)(8) by threatening to foreclose in violation of the law; and (4) violated section 392.304(a)(8) by serving two notices that did not indicate the amount of the default and the amount required to cure the default.

BANA moves for summary judgment on these claims, asserting that there is no evidence to support any of the TDCA claims.

In order to state a claim under the TDCA, Plaintiffs must show: (1) the debt at issue is a consumer debt; (2) Defendant is a debt collector within the meaning of the TDCA; (3) Defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against Plaintiffs; and (5) Plaintiffs were injured as a result of Defendant's wrongful act. The TDCA does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3); *Sweet v. Wachovia Bank and Trust Company*, No. 3:03-CV-1212-R, 2004 WL 1238180, at *3 (N.D. Tex. Feb. 26, 2004).

Plaintiffs offer no evidence that BANA did anything that was false or deceptive in attempting to collect the debt, or threatened an action prohibited by law.

Section 392.304(a)(8) states, "in debt collection or obtaining information concerning a

11

consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that... misrepresent[s] the character, extent, or amount of a consumer debt." For a statement to constitute a misrepresentation under the TDCA, defendant must have made a false or misleading assertion. *Reynolds v. Sw. Bell Tel., L.P.*, No. 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. App.-Fort Worth June 29, 2006, pet. denied). The TDCA does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3). Foreclosure is not an action prohibited by law.

Plaintiffs' basis for this claim is that BANA promised a loan modification for dismissal of the previous suit. The Court has rejected this claim because there is no summary judgment evidence to support such a claim. Plaintiffs also assert that the two notices provided to Plaintiffs regarding acceleration did not provide the amount of default and the amount required to cure. Plaintiffs offer no summary judgment evidence to support this assertion, other than the self-serving statement, which is rejected by the Court. Plaintiffs fail to offer the notices in question. Instead, BANA offers the notice of default, which identifies the amounts needed to cure the default, and informs Plaintiffs that their failure to cure by January 6, 2010, could result in the foreclosure of the Property. BANA also served Plaintiffs with the notices of foreclosure sale, informing them the debt has been accelerated. There is also no genuine issue of fact regarding service of the notices, because service of a notice by certified mail is complete when the notice is deposited in the United States mail to the last known address of the debtor. Tex. Prop. Code § 51.002(e). Richard Powell admitted that when they did receive payoff statements, they were "probably accurate." There is no evidence that BANA violated this section of the Texas Finance Code. *See Watson v. Citimortgage, Inc.*, No. 4:10-cv-707, 2012

WL 381205, at *8 (E.D. Tex. Feb. 3, 2012).

Section 392.303(a)(2) prohibits a debt collector from using unfair or unconscionable means that employ the following practices: collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer. Plaintiffs failed to offer evidence of charges unauthorized by the Deed of Trust, and the Court cannot find a genuine issue of material fact regarding this claim.

Section 392.304(a)(19) prohibits a debt collector from using "any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." The TDCA does not prevent a debt collector from exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings. Plaintiffs allege BANA violated section 392.304(a)(19) by promising to modify their loan, but instead pursued foreclosure. The Court has already rejected this theory because the uncontroverted evidence establishes there was no promise to modify Plaintiffs' loan. There is no evidence to support Plaintiffs' claim under section 392.304(a)(19).

BANA took no action which violated the TDCA, and Plaintiffs have no evidence that BANA violated the TDCA. Plaintiffs have no evidence that BANA misrepresented "the character, extent, or amount of a consumer debt" nor that BANA used any "false representation or deceptive means to collect a debt." BANA sent the proper notices to the Plaintiffs which stated that the Note was in default. No communication or demand sent by BANA misrepresented the amount owed upon the Note. In addition, Plaintiffs have no evidence of any alleged damages under the TDCA.

13

**Negligent Misrepresentation Claim**

Plaintiffs allege BANA is liable for negligent misrepresentation. To support their claim, Plaintiffs allege, "Defendant misrepresented its agreement to modify Plaintiffs' loan . . . made numerous representations regarding this Property, including the status of the loan modification, the time frame the modification would occur within, and the effect a loan modification application would have on their Property."

In order to demonstrate a claim for negligent misrepresentation, Plaintiffs must show: (1) the defendant made a representation in the course of its business, or in a transaction in which it had a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representations. *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.24 (Tex. 2002)). Notably, as to the second element of supplying false information, "the misrepresentation at issue must be one of existing fact." *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied). "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." *Id.* Promises of future conduct are insufficient to support a claim for negligent misrepresentation. *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 125 (Tex. App.—Austin 2003, no pet.). To be actionable, defendant's statements must pertain to an existing fact. *Id.*

BANA asserts that the summary judgment evidence shows Plaintiffs' claim is meritless and that their claim is barred by the economic loss rule.

Plaintiffs assert that BANA misrepresented its agreement to modify the loan in return for dismissal of the prior lawsuit. The Court has rejected this theory as unsupported by the summary judgment record. Plaintiffs also assert that BANA made numerous misrepresentations regarding this Property, including the status of their loan modification, the time frame within which the modification would occur, and the effect a loan modification application would have on their Property. Plaintiffs simply failed to offer any summary judgment evidence to support these claims. Plaintiffs' reliance upon their former attorney does not support a claim against BANA. There is no evidence to support any misrepresentation that was made by BANA.

BANA also asserts that this claim fails as a matter of law under the economic loss doctrine because the sole basis for liability, if any, against BANA is contractual in nature by the terms of the Note and Deed of Trust.

The economic loss rule generally precludes recovery in tort where a plaintiff's only injury is an economic loss to the subject of a contract. *Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W.3d 529, 541 (Tex. App. – Tyler 2008, pet. denied) (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)). "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *UMLIC VP LLC v. T&M Sales and Envtl. Sys., Inc.*, 176 S.W.3d 595, 614 (Tex. App.–Corpus Christi, 2005, pet. denied) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). The focus of the rule "is on determining whether the injury is to the subject of the contract itself." *Academy*, 260 S.W.3d at 541 (citing *Lamar Homes*, 242 S.W.3d at 12). The rule restricts contracting parties to contractual remedies for such economic losses, even when the breach might reasonably be viewed as a

consequence of a contracting party's negligence. *Id.* (citing *Lamar Homes*, 242 S.W.3d at 12-13). "If the action depends entirely on pleading and proving the contract in order to establish a duty, the action remains one for breach of contract only, regardless of how it is framed by the pleadings." *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex. App. – Tyler 2003, pet. denied). Thus, in order for a tort duty to arise out of a contractual duty, i.e., negligent failure to perform a contract, the liability must arise independent of the fact that a contract exists between the parties; the defendant must breach a duty imposed by law rather than by the contract. *DeLanney*, 809 S.W.2d at 494.

"[W]hen a written contract exists, it is more difficult for a party to show reliance on subsequent oral representations." *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 651 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Generally, "negligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties." *Airborne Freight Corp. Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295 (Tex. App.—El Paso 1992, writ denied); *see Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no. pet) (explaining that "there must be an independent injury, other than breach of contract, to support a negligent misrepresentation finding.").

Plaintiffs assert that they have presented evidence of personal injuries which are outside the subject matter of the contract and benefit-of-the-bargain damages. Even if there were evidence that Plaintiffs suffered mental anguish or emotional distress, Plaintiffs cannot avoid application of the economic loss rule. *See Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 453 (Tex. App.–Dallas, 2002, no pet.). However, even if mental anguish damages would defeat application of this rule, the Court agrees with BANA that there is insufficient evidence to support their claim for these damages. Plaintiffs' summary judgment evidence does not reveal any injuries of such a

shocking and disturbing nature that mental anguish was a highly foreseeable result. Any complaints by Plaintiffs about BANA's failure to forebear foreclosure relate to the parties' contractual relationship under the terms of the Note and Deed of Trust, and cannot, as a matter of law, form the basis of a negligence or negligent misrepresentation claim.

**Declaratory and Other Equitable Relief**

BANA also moves for summary judgment on Plaintiffs' claims for declaratory relief and for an accounting.

The federal Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but does not impose a duty to do so. *Id.*

The Declaratory Judgment Act is a procedural device that creates no substantive rights, and requires the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984). Thus, the Act provides no relief unless there is a justiciable controversy between the parties. The Fifth Circuit stated as follows:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.
>
> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgments.

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations and quotations omitted).

At the present time, there is no actual controversy between the parties that would allow for declaratory relief, and this claim should be denied. Furthermore, Plaintiffs are not entitled to these equitable remedies, including an accounting and injunctive relief, because they have no viable cause of action.

It is therefore ORDERED that Defendant Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP's Motion for Summary Judgment (Dkt. #65) is hereby GRANTED and Plaintiffs' case is DISMISSED with prejudice.

**SIGNED this 21st day of January, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE